UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                    CRIMINAL NO. 18-20754

v.                                  Hon. VICTORIA ROBERTS

D-1 KEVIN HSIEH,

    Defendants.

_____/

**Government's Sentencing Memorandum**

    For the better part of seven years, Hsieh tormented MV-1. He took advantage of her vulnerabilities. He raped her. He took her virginity. He produced dozens of child pornographic videos and images of her. He tried to impregnate her with his child. And, when she wanted it to stop, he manipulated her into meeting with him again so that he could forcibly rape her. He threatened to disseminate the large collection of videos and images he had amassed of her if she did not continue to have sex with him. He, a man in his late thirties, repeatedly told MV-1, who was less

Page **1** of **17**

than half his age, that if she told anyone about him, no one would want or accept her.

As agreed to in the Rule 11, Hsieh's guidelines are life imprisonment. The parties negotiated a resolution that allowed Hsieh to avoid indictment in the Western District of Michigan and further investigation by the Novi Police Department. The Government recommends a sentence of **45 years' imprisonment** followed by 10 years of supervised release.

**I. Factual Background**

In 2011, MV-1 was a 14-year old girl living in an unstable home with a physically abusive and alcoholic mother. Kevin Hsieh was a 36 year-old man with a wife and three small children, ages 14, 9, and 8 years old. Hsieh's only job was to take care of the kids. During that time, he found MV-1 on MySpace and started chatting with her. Although her profile stated she was 19, he could tell by looking at her pictures that she was a child. He told her he would be the one to take her virginity. He said he was in love with her. And, he offered her gifts, a cellular phone, and jewelry – items that were novel in her world. He arranged to meet MV-1 in Muskegon, Michigan. He raped her in the woods during their very

first meeting. A few months later, when MV-1 was still just 14, he met her in a motel room. MV-1 told him she was underage, but he had sex with her anyway. This time, he recorded it. He continued to abuse MV-1 throughout that year. In the fall of 2011, MV-1 told him she was just 14-years old, the same age as his oldest child.

Unphased, Hsieh set up numerous meetings with MV-1, recording many videos depicting him having her perform oral sex on him, him having her engage in vaginal and anal sex with him, and of MV-1's naked vagina. Hsieh told MV-1 not to use contraception, said he wanted to have a baby with her, pressured her to engage in anal sex, and spoke about having his "golf buddies" come join them in the bedroom.

Then, in 2013, starting when MV-1 was 15, Hsieh moved from Muskegon to Novi. Once there, he spent multiple days a week with MV-1, offering her rides to and from school, helping her fill out paperwork, and having sex with her "too many times to count," sometimes at his house while his wife and children were away and other times at her home. He collected more and more explicit photographs and videos of her. He stored them on his phone and on his computers and told her he was storing them because he liked to "look back" at them later.

In one of the images Hsieh created, MV-1 is depicted nude, face down on a bed, with her hands restrained in front of her and her legs spread to display her anus and vagina. In another, Hsieh is pulling MV-1's head back by her hair and appears to be about to penetrate her with his penis.

In 2015, MV-1 told Hsieh she was done. In May of that year, Hsieh told MV-1 that if she was not going to have sex with him, he wanted all the gifts he had given her back, including her cellular phone. MV-1 agreed to meet up with him to give him the cell phone. Once in the car, Hsieh told her he wanted to have sex. She started crying and said no. Hsieh pushed her down on her stomach and forcibly raped her. According to MV-1, he did not use a condom. Hsieh told her that, if she ever told anyone, no one would accept or support her, and she would have nowhere to go. Earlier that year, MV-1's mother had physically assaulted her while intoxicated, and Hsieh knew that MV-1 was then living with a family from her church.

On June 26, Hsieh sent a message to MV-1 threatening to post sexually explicit videos of her on PornHub if she did not meet up with him again for sex:



Kevin Hsieh has shared a video with you on YouTube

It's private on YouTube for the moment. Shall I upload it to PornHub? You might make some money off it if there's lots of views.
My farewell present to you before I leave the country for a while. All you had to do was keep our agreement, but you decided to play games. Well, this is a grown up game.

Hsieh also told MV-1 that he would send the graphic pictures of her to her grandmother if she cut-off contact with him. Around this same time, Hsieh started a sexual relationship with MV-1's mother and used that relationship to manipulate MV-1. MV-1's mother began telling her that Hsieh was not a bad guy, and Hsieh messaged MV-1 about the new relationship.

MV-1 blocked Hsieh's email, but he continued to reach out to her. In 2016, he showed up at her workplace. He texted her repeatedly to

come out to his car and stayed in the parking lot for more than thirty minutes after trying to speak to her. She had to tell her coworkers that he was an "ex" of her mom and continually texted him to "go away" or she would call the police. Eventually, MV-1 told her boyfriend what was going on, and he drove to meet her at work. Hsieh left before he got there.

After this incident, Hsieh continued to stalk MV-1. In 2018, he somehow found out that she had a new job and sent her an email congratulating her. By this time, MV-1's boyfriend was very aware of all of Hsieh's abuse. He had at first tried reaching out to Hsieh's wife to get him to stop bothering her, but when that didn't work, he submitted an anonymous tip to the Novi Police Department.

After receiving this tip, police interviewed Hsieh in July of 2018. During that interview, he admitted to having sex with MV-1 starting in 2011 or 2012 and to producing child pornography of her. He also explained that police would find images and videos of MV-1 on his phone and computers. He said he knew from the beginning that MV-1 was underage based on her photographs and that, over the years, he had confirmed that she was a minor multiple times when he saw legal documents with her date of birth on them.

## II.  ADVISORY SENTENCING GUIDELINES

The Guidelines in this case are not in dispute.  In the Rule 11, the parties agreed that Hsieh is a criminal history category I with an offense level 43, resulting in a Guideline range of life imprisonment.

However, despite agreeing to them during his plea, Hsieh raised objections to Probation's application of the sadomasochistic conduct enhancement, the use of a computer enhancement, and the pattern of activity enhancement.  Hsieh took images/video of MV-1 that depicted her restrained, depicted him grabbing her by the hair, and depicted him penetrating her anally.  He stored these images on a computer and a cellular phone and used a cellular phone and video recording device to take them.  He communicated with MV-1 on MySpace to arrange their first meeting so they could have sex, and he asked MV-1 for child pornographic images via text message and on social media. Had Hsieh produced child pornography of MV-1 on just two occasions or had sex with her just twice when she was 14 or 15, the pattern of activity enhancement would apply.  In this case, he did both dozens of times.  Even if Hsieh had not already agreed that these enhancements were applicable, the forensic evidence and his own statements support their application.

## III. SENTENCING FACTORS, TITLE 18 U.S.C. § 3553

Congress has provided, through 18 U.S.C. § 3553(a), the relevant objectives and factors to be considered by sentencing courts in imposing a "sentence sufficient, but not greater than necessary." Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation, and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution.

The most relevant factors are evaluated below, beginning with number 4, the sentencing guidelines.

### A.  The 3553(a) Factors as Applied in This Case

The parties agree that the appropriate guideline range is life imprisonment. The Government has carefully considered the sentencing factors and the need to avoid unwarranted sentencing disparities in

recommending a sentence of **45 years' imprisonment** followed by 10 years of supervised release.

### 1. Nature and Circumstances of the Offense

The nature and circumstances of this offense warrant a sentence of life imprisonment.  It is because of certain other sentencing factors that the Government is recommending a downward variance and a sentence of 45 years.  Nothing about the nature and circumstances of this offense take it out of the heartland or suggest that any downward variance is appropriate.   Quite  the  opposite.   Hsieh  is  every  parent's  worst nightmare, but Hsieh took advantage of MV-1 knowing that she did not have a parent who was in a position to protect her.  He not only engaged in sexually explicit conversations with a minor, but he met up with her and had sex with her when she was just 14, the same age as one of his own children.  When he found out her true age, he continued to abuse her, teaching her to do all manner of sexual acts that were well beyond her years.  And, he didn't just do this once or twice or a dozen times.  He did it over and over again for years.  Worse still, he pressured MV-1 against using contraceptives, trying to convince her that they should have a baby together.

Moreover, Hsieh, unlike many others that stand convicted of the same offense, did more than just meet up and abuse MV-1. He asked her for explicit photographs. He recorded extremely graphic videos and images of her and amassed a collection of her that he retained years after she cut-off contact with him. And, he used that collection to blackmail her.

Hsieh's blackmail was not limited to his threats to post her images on PornHub or to share them with her grandmother. He also threatened to get her kicked out of the home she was living in, put her in jeopardy by showing up at her work, and started a sexual relationship with her mother to manipulate her. He used the items he had purchased for her and the assistance he had provided her to make her dependent on him and took it all away when she would not continue to do what he wanted.

There are too many aggravating factors to count when it comes to Hsieh's conduct – the fact that he engaged in this abuse in the same home where his wife and teenage children slept, the fact that he knew MV-1 had no one else to turn to because of her unstable home life, the extent and duration of the abuse, the blackmail, the number of child pornography images and videos he created and the fact that he retained

them, and the pressure he put on a 14-year old girl to not use contraceptives. And, all of these fail to account for the fact that Hsieh forcibly raped MV-1 after she cut things off when he was ostensibly getting his phone back from her. Were Hsieh's conduct limited to that rape alone, the appropriate sentence in this case would be measured in decades. But here, where that rape was the culmination of hundreds of occasions of abuse, the nature and circumstances of this offense warrant a life sentence.

## 2. History and Characteristics of the Defendant, 18 U.S.C. § 3553(a)(1).

Nothing about Hsieh's history and characteristics suggests that a sentence of **45 years** is unwarranted.[1] Hsieh had and continues to have a supportive family. PSR ¶ 43. He is well educated. He completed high school and went to Switzerland for college, where he received a bachelor's degree in hotel management. PSR ¶¶ 43, 47. He has lived in the United States since 1996 and had stable employment until 2003. PSR ¶ 45. He does not have any significant physical or mental health ailments. PSR ¶¶ 47, 48.

---

[1] If the Court imposes the Government's recommended sentence, Hsieh will likely be released when he is in his mid-70s.

Moreover, unlike so many child exploitation offenders, Hsieh does have a criminal history. He has a 2008 conviction for domestic violence that stems from his conduct with his then 11-year old stepson. PSR ¶ 37. Because of this offense, he was required to go to counseling and was on probation for six months. Also, unlike many of our offenders, Hsieh's employment does not weigh in his favor. From 2003 through 2017, Hsieh's job was to take care of his children. It was during this time that he started abusing MV-1. Moreover, Hsieh's main activity was volunteering as a coach for the middle and high school robotics team. Hsieh's choice to continuously participate in activities with kids that were around the same age as MV-1 is alarming. If nothing else, his continuous interaction with children her age should have made him fully aware of how vulnerable she was and of how culpable he was for abusing her.

### 3. The Sentence Imposed Must Reflect the Seriousness of the Offense, Promote Respect for the Law and Provide Just Punishment, 18 U.S.C. §3553(a)(2)(A)

Hsieh's offense conduct – seeking out and meeting up with a 14-year old girl, repeatedly sexually abusing her for years, creating a collection of child pornographic videos and images of her, and blackmailing and manipulating her when she refused to do what he wanted – is extremely serious. Hsieh has little to no respect for the law. He resorted to violence when MV-1 told him she was going to go to the police, forcibly raping her and threatening to share the images and videos he had created of her. He is well-educated and has been in the United States since 1996. He knew what he was doing was wrong and told MV-1 many times no to tell anyone about him and that, if she did, she would be even more of an outcast than she already was. The seriousness of the offense, just punishment, and promoting respect for the law all call for the Government's requested sentence of **45 years.**

4. **The Sentence Imposed Must Afford Adequate Deterrence to Criminal Conduct and Protect the Public from Further Crimes of the Defendant, 18 U.S.C. §3553(a)(2)(B) and (C)**

A **45 year sentence** is also necessary to deter others from doing what Hsieh did. Potential offenders who think about doing what he did – producing hundreds of child pornography videos and images, repeatedly raping a teenage girl, encouraging and directing her to engage in sexual activity that was well beyond her years, and using blackmail and violence on her when she tried to escape – should know that, if they are caught, they will spend the rest of their lives in prison.

Most importantly, a **45-year sentence** is necessary to protect the public. According to a 2013 report from the Centers for Disease Control, suicide is the third leading cause of death for children age 10 to 14 years old, and the second leading cause of death for children age 15 to 24.[2] A July 27, 2016 assessment by the FBI concluded that "it is very likely child sextortion victims are attempting suicide or engaging in other self-harming behavior due to their sextortion victimization," with "very likely" meaning 80-95 percent. *Id.* According to the assessment, "the

---

[2] *Children Committing Suicide or Engaging in Other Self-Harm due to Sextortion Victimization*, FBI Criminal Investigative Division, (July 27, 2016).

prevailing hypothesis continues to be sextortion is a major, if not the underlying, factor for child victims taking their lives in these scenarios." *Id.*

Here, Hsieh took something from MV-1 that she can never get back – her innocence and her childhood. MV-1 struggled immensely for many years because of what he did.

### 5. The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct 18 U.S.C. §3553(A)(6).

A **45-year sentence** will avoid unwarranted sentencing disparities. Dozens of defendants who created two or three child pornography images or videos and met up with a minor for sex receive life sentences or sentences of hundreds of years of imprisonment. But, here, Hsieh's conduct went well beyond that. MV-1 endured years of abuse because of Hsieh. He amassed a collection of hundreds of videos and images of her. He used violence and blackmail against her. He tried to impregnate her.

## Conclusion

The Government requests that the Court impose a sentence of **45 years' imprisonment** followed by 10 years of supervised release.

Respectfully submitted,

Matthew Schneider
United States Attorney

s/April N. Russo
April N. Russo
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9129
E-Mail: april.russo@usdoj.gov

Dated: February 13, 2020

## Certificate of Service

I hereby certify that on February 13, 2020, I electronically filed the Government's Sentencing Memorandum for the United States with the Clerk of the Court of the Eastern District of Michigan. The memorandum was sent via ECF to Bryan Sunisloe, the attorney for Kevin Hsieh.

s/April N. Russo
April N. Russo
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone:  (313) 226-9129
E-Mail: april.russo@usdoj.gov